(No. 25216.— )
A. B. ALLEN, Receiver, Appellant, *vs.* JUDSON P. BEEMER
*et al.* Appellees.

*Opinion filed October 13, 1939—Rehearing denied Dec. 6, 1939.*

WILSON, C.J., and FARTHING, J., dissenting.

WARNER & WARNER, (H. C. WARNER, M. C. PIRES,
and R. W. ZASTROW, of counsel,) for appellant.

FREMONT M. KAUFMAN, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

This litigation originated in the circuit court of Lee county by a complaint in the nature of a creditor's bill, seeking to enforce collection of certain money due to the Marble Rock Bank of Marble Rock, Iowa, from the estate of Nellie A. Wilson, deceased. The original complaint was filed in December, 1937, and, thereafter, in February, 1938, an order was entered in the county court of Lee county finding two separate and distinct wills of Benjamin F. Beemer taken and construed together to be his last will and testament. Thereafter, a supplemental complaint was filed in this cause, and the issue eventually submitted for a decision on the record is whether or not the "Iowa" will, hereinafter referred to, amounted to a revocation of the "Illinois" will, which is also hereinafter set forth. On the record as it stood in the trial court, if the two wills were both held to be in effect and construed together, the plaintiff could have no interest in the premises, whereas, if the Iowa will effected a revocation of the Illinois will, then the decedent was intestate as to the Illinois property, and his daughter, Nellie A. Wilson, now deceased, inherited an undivided one-half interest therein which could be subjected to the plaintiff's judgment. The trial court held both wills to be in effect and to be construed together and on such holding granted a motion to dismiss. This appeal is from the dismissal pursuant to that ruling of the trial court.

Benjamin F. Beemer was a resident of Floyd county, Iowa. He owned a farm in Lee county, Illinois, and another farm, as well as personal property, in Floyd county, Iowa. On May 22, 1928, at Paw Paw, Illinois, he executed the following will, except formal parts thereof:

"Second: It is my intention by this last will and testament to dispose only of my real estate in Lee county, Illinois, which is known and described as follows: [Here follows exact legal description of the farm.]

"Third: I give, and devise to my beloved wife, Mary Beemer, a life estate in all of the above described real estate, for her use and benefit for and during the term of her natural life, to be taken and accepted by her in lieu of dower, homestead, widow's award and every other provision made by statute for her benefit by the laws of the State of Illinois.

"Fourth: Subject to the above life estate to my wife, Mary Beemer, I give and devise to my son, Judson F. Beemer, and his wife Laura Beemer, and to the survivor of them, a life estate in all of the above described real estate, for their use and benefit for and during the term of their natural lives, and for the use and benefit of the survivor of them, and at the death of the survivor of them, I give and devise the above described real estate to the children of the said Judson F. Beemer, to be divided equally among them, share and share alike, the children of any deceased child of said Judson F. Beemer to take the share their parent would have taken. And if no children or descendants survive the said Judson F. Beemer, then, at the expiration of the life estate of the said Judson F. Beemer and Laura Beemer, the above described real estate shall descend to vest in and become the property of my daughter, Nellie A. Wilson, if she be living, and if she be not living, then to her children in equal parts among them.

"Lastly: I hereby nominate and appoint my son, Judson F. Beemer, sole executor of this my last will and testament, without bonds, hereby revoking any and all former wills by me made.

"In Witness Whereof I have hereunto set my hand and seal this 22nd day of May, A. D. 1928.

BENJAMIN F. BEEMER. (Seal.)"

Thirty-five days after the date of this will at his home in Floyd county, Iowa, Benjamin F. Beemer executed the following will, except formal parts thereof:

"First: It is my will and direction that all of my just debts and funeral expenses be fully paid and discharged.

"Second: It is my intention by this last will and testament to dispose of my personal property and estate and of that part of my real estate situated in Floyd county, Iowa, as hereinbelow described, to-wit: [Here follows exact legal description of farm.]

"Third: I give and bequeath to my beloved wife, Mary Beemer, all of my personal property and estate, of every kind and nature, and wherever situated, as and for her own, absolutely.

"Fourth: I give and devise to my said wife, Mary Beemer, a life estate in all of the above described real estate, for her use and benefit for and during the term of her natural life, to be taken and accepted by her in lieu of dower, homestead, widow's award, and every other provision made by statute for her benefit by the laws of the State of Iowa.

"Fifth: Subject to the above life estate to my wife, Mary Beemer, I give and devise to my daughter, Nellie A. Wilson, a life estate in all of the above described real estate, for her use and benefit for and during the term of her natural life, and at her death I give and devise the above described real estate to the children of the said Nellie A. Wilson, to be divided equally among them, share and share alike, the children of any deceased child of my said daughter to take the share their parent would have taken. And if no children or descendants survive my said daughter Nellie A. Wilson, then at the expiration of the life estate of the said Nellie A. Wilson, the above described real estate shall descend to, vest in and become the property of my son, Judson F. Beemer, if he be living, and if he be not living, then to his children in equal parts among them.

"Sixth: It is my will and direction that if my daughter Nellie A. Wilson, should die before her husband, L. N. Wilson, died, that the sum of one thousand dollars ($1,000.00) shall be paid to the said L. N. Wilson out of the share of the said Nellie A. Wilson.

"Seventh: It is my will and direction that the funeral expenses of myself and my wife, in case she survives me, shall be paid out of my estates, both that in Illinois and that in Iowa, so that each of my children shall share equally in such funeral expenses. (I am not disposing of all my real estate by this will, but am retaining undisposed of by this will forty acres in Floyd county, Iowa, described as the northeast quarter of the southeast quarter of section twenty (20) in township ninety-four (94) range seventeen (17) west of the fifth principal meridian.)

"Lastly: I nominate and appoint my wife, Mary Beemer, sole executrix of this my last will and testament, without bonds, hereby revoking any and all former wills by me made.

"In Witness Whereof I have hereunto set my hand and seal this 27th day of June, 1928.

BENJAMIN F. BEEMER. (Seal.)"

The appellant insists that the precise wording of the Iowa will is clear, positive and rigid; that there is neither ambiguity nor uncertainty in the words "hereby revoking any and all former wills by me made," which occur in the clause appointing the executrix, and that Benjamin F. Beemer was, therefore, intestate as to his Illinois farm. This argument is based upon the well-known rule that there is no necessity nor room for construction where there is neither ambiguity nor uncertainty. (*Bartlett* v. *Mutual Benefit Life Ins. Co.* 358 Ill. 452; *Carlin* v. *Helm,* 331 id. 213.) He also insists that where the language of a will has a settled legal meaning the intention of the testator must be drawn from that language, and that circumstances surrounding a testator will not be permitted to import an intention not expressed where no uncertainty exists as to the meaning of the language used.

On the other hand, the appellees seek to sustain the judgment of the trial court by certain other general rules. Thus, they say that the intention of the testator must be

ascertained from the entire will, for which they cite *Riddle* v. *Killian,* 366 Ill. 294, and many other cases. They say the will must be read in the light of the circumstances in which it was made. (*Norton* v. *Jordan,* 360 Ill. 419; *Chapin* v. *State Treasurer,* 361 id. 645; *Rettig* v. *Zander,* 364 id. 112.) Finally, they insist that a revocation clause is not always nor of necessity imperative, but that its effect, like any other clause in a will, must be determined and its meaning construed in connection with every other clause in the will and from the circumstances surrounding the testator. On this proposition they cite 40 Cyc. 1174; 68 Corpus Juris, 804; 1 Jarman on Wills, (5th ed.) p. 173; 1 Schouler on Wills, (6th ed.) sec. 615; 1 Redfield on Wills, (3d ed.) pp. 342, 346; 1 Underhill on Wills, p. 354; 1 Williams on Executors, (10th ed.) p. 122; Thompson on Wills, (2d ed.) sec. 36; *Denny* v. *Barton,* 2 Phillin. 575; *Dempsey* v. *Lawson,* 2 P. D. 107; *Jones* v. *Jones,* 17 N. C. 387; *Smith* v. *McChensey,* 15 N.·J. Eq. 359, 361; *Owens* v. *Fahenstock,* 96 S. E. (S. C.) 357; *In re Smith's Will,* 254 N. Y. 283, 172 N. E. 499, 72 A. L. R. 871; *Van Wert* v. *Benedict,* 1 Brad. (N. Y.) 114, 121.

On oral argument, and in his brief, appellant appears to place his principal reliance on *Ennis* v. *Smith,* 14 How. 400, which involved the force of a general revocation clause contained in the will of General Kosciusko, which was executed in 1816. This case was given extended consideration by the Supreme Court of the United States because of the prominence of the testator in the Revolutionary war, but the largest part of the opinion is devoted to matters concerning the liability of sureties and the effect of a residuary clause, rather than to the point now under consideration. It appears from the record that General Kosciusko possessed a considerable fund in the United States which was voted to him by Congress in recognition of his services above mentioned. These funds were entrusted to Thomas Jefferson for investment and remittance of income to the

General at his various European addresses. His first will was made in the United States in 1798, and its general intent was that the proceeds should eventually be used to purchase young negroes, educate them and then give them their emancipation. His second will was made in Paris in 1806, and by this will he charged the funds in America with a legacy to one Armstrong, who appears to have been a resident of Switzerland. In 1816, in Switzerland, he made another will which was entirely holographic. It was written in French and the clause of revocation appears to have been translated as follows: "I revoke all the wills and codicils which I may have made previous to the present to which alone I confine myself as containing my last wishes." This revocation clause, like the body of the will, was in the handwriting of the testator. His last will was also made in Switzerland in 1817, and contained the residuary bequest which the United States Supreme Court construed. In a letter by Thomas Jefferson written to the Russian Minister in Washington at the request of the Viceroy of Poland, Jefferson made the statement that, in 1817, he had received a letter from the General in reference to the trust fund above mentioned and in which Jefferson stated that General Kosciusko had requested certain arrangements so that the interest might be remitted promptly, and said: "Of which money, after my death, you know the fixed destination." It was contended that the letter to Jefferson (the existence of which seems to have been admitted by the pleadings) prevented the will of 1816 from revoking the will of 1798. The Supreme Court of the United States discussed the right to revoke a will under the laws of France, where the General was domiciled, and held that the revocation was permissible and was effected. The case contains no discussion of the problem now before us and is clearly to be distinguished from it. That Kosciusko was not unaware of the American fund nor unconscious of his power to dispose of it by will, is shown by the second will, which he made in

1806, whereby he charged those funds with a legacy. The will of 1816 did not purport to be limited to one particular estate nor did it recognize the existence of another estate, as does the will we are considering. Furthermore, the revocation clause was entirely holographic, thus eliminating any possibility of any inadvertence or mistake, unless it might be a mistake of law. The wills indicate that the testator had no natural objects for bounty, the distribution being to friends, and there is nothing in the printed report to disclose any general plan or scheme of distribution.

Appellant has cited several other cases which we have examined. He cites *Head* v. *Nixon,* 22 Ida. 765, 128 Pac. 557, and quotes certain language in the opinion concerning the effect of a clause of general revocation, but an examination of the case discloses that the two wills were totally inconsistent and that the latter will would, in any event, overturn the first one, regardless of the effect of the revocation clause. In the case of *Ely's Estate,* 74 Ore. 561, 146 Pac. 89, the court gave full effect to a revocation clause, but expressly found that there was no ambiguity, either latent or patent, and that the court was, therefore, not free to construe the language. There was also a disposition of property in the second will which was inconsistent with the first one. Likewise, in *Dudley* v. *Gates,* 124 Mich. 440, 83 N. W. 97, there was a complete inconsistency between the two wills, and the same is true as to the cases of *In re Laege's Estate,* 180 Wis. 32, 192 N. W. 373, and *Burns* v. *Travis,* 117 Ind. 44, 18 N. E. 45.

The appellees place their principal reliance upon *In re Smith's Will,* 254 N. Y. 283, 172 N. E. 499, 72 A. L. R. 871. This case, like those cited by the appellant, is distinguishable from the case at bar, but also, like those which we have considered, is nearly enough to the point to require comment.

In 1911, the testatrix made a will in the State of New York in which she declared that every provision of that will

should be satisfied out of property in New York and expressed her intention to make a second will disposing of property in Florida. Her estate in New York consisted of $23,000 in properties which were in New York in the custody of a bank at the time she made the New York will and at the time of her death. At the time she made the New York will her nearest relatives were three nieces and another connection by marriage, whom she recognized as a niece. By that will she made provision for these persons and certain charities, leaving the remainder to the Young Men's Christian Association and the Children's Aid Society. In 1912, she made a will in Florida devising certain real estate to certain named persons and the residue, other than the New York properties, to one of the nieces above mentioned. Afterwards, she sold all of the real estate which she had devised to the niece and made certain legacies to charities and to a cousin. At the time she made the Florida will one of the nieces was dead and another insane. There was no residuary clause in the Florida will but it did contain the words "hereby revoking all former wills by me made."

The New York Court of Appeals held that the revocation clause, although general in form, was not intended to apply to the New York property. The court said: "The question is whether said facts, extrinsic to the writing, indicate that the literal meaning of the language employed is not in accord with the meaning which the testatrix intended to give it, and whether, when the real intent is shown, the words are adequate to expressing such intent. * * * It is thus made apparent that the testatrix, throughout a long period, from the date of her earliest to that of her latest will, cherished the thought that her New York properties, and her properties elsewhere situate, were things apart which should be managed independently and be disposed of separately. Such having been her state of mind and persistent thought, it is highly probable that the testatrix in executing the Florida will of 1924, wherein an

omission to mention the New York properties and the New York will is made, had no intention to revoke the testamentary disposition thereof previously provided for. We think that an intent thus limited finds sufficient expression in the revoking clause employed by her. The testatrix revokes "all former wills by me made," whereby properties other than those situate in New York State were made the subject of disposition. For this view we find authority in the following: *Denny* v. *Barton,* 2 Phillin. 575; Jarman on Wills (6th Am. ed.) vol. 1, p. 170; Williams on Executors (5th Am. ed.) vol. 1, p. 122."

In an annotation to this case appearing in 72 A. L. R. on page 871, it is said "An extensive search reveals no other cases in which the problem considered in the reported case has arisen." The careful briefs in the case before us and our own research have been equally fruitless in efforts to find any adjudicated case which is precisely or even substantially similar to the one we are now considering. Nothing has come to our attention which is not in some way distinguishable and we must, of necessity, be remitted to the general rules which are applicable in the determination of this litigation.

Authorities have hereinabove been referred to for these general rules, all of which are so well established as to require no further citation. No one will doubt that all of these rules are intended to supplement and give force to the basic one—*i. e.,* that the intention of the testator is to be carried out if it can be ascertained and if it be not contrary to established rules of law. On the other hand, no one will dispute the appellant's contention above mentioned that where the language of the will has a settled legal meaning the intention of the testator is to be drawn from that language and that surrounding circumstances will not be permitted to import a different meaning than that expressed, unless there exists such an ambiguity or uncertainty as to permit and require a construction by the court.

Jarman and the other text writers mentioned above state the rule to be that even an express clause of absolute and present revocation of all former wills may be reduced to partial or even total silence either by showing that the clause was inserted by mistake or inadvertence or that it would be unreasonable to give unrestrained effect to the words.

Our first inquiry must therefore be to determine if there is such an ambiguity in the Iowa will as will require, or even permit, any interpretation of the express words used. That there is such an ambiguity, we think is clear, as we think, also, is the intention of the testator.

A parallel examination of the two wills indicates that the Iowa will was copied from the prior will made in Illinois and indicates at least a possibility that they were on printed forms, although the record does not disclose this to be true. At any rate, the first two paragraphs of each will are in all respects identical even as to punctuation and this is also true of the attestation clause, the clause appointing executors (except as to the persons appointed) and as to the attestation clause. The provisions in the Iowa will giving the wife a life estate are absolutely identical with those in the Illinois will, except that the word "Iowa" is substituted for the word "Illinois." This is also true as to the wording of the Iowa will giving a life estate to the daughter with the remainders to her children and alternate remainders to the children of her brother if she should die without children, except that in the Iowa will the daughter is mentioned, whereas in the Illinois will the son and his wife are mentioned as joint life tenants. We think it most significant (and in fact controlling) that the seventh clause of the Iowa will directs that the funeral expenses of himself and his wife "shall be paid out of my *estates,* both that in Illinois and that in Iowa, so that each of my children *shall share equally* in such funeral expenses." This is a clear indication of the testator's recognition and understanding that he

had devised his Illinois farm to his son and his son's children, because on no other theory could this direction as to funeral expenses result in an equal burden against his children. This clause cannot stand side by side with the revoking clause and it follows that one or the other must be modified by construction.

Other circumstances lead to the same result. Each will is, by its terms, carefully limited to specifically described property. Neither of them contains a residuary clause. In the seventh clause the testator expressly declares himself to be intestate as to a certain forty-acre tract of land, but does not declare himself to be intestate as to his estate in Illinois, although in the same clause he recognizes the existence of that estate and subjects it to a charge for funeral expenses. The two wills not only fail to overlap in any respect, but actually come together and join in a perfectly harmonious whole, and when so joined present a completely harmonious, just and reasonable distribution of his estate among the natural objects of his bounty. Taken together they provide fully for his wife, equally for his children and reasonably *per stirpes* for his grandchildren. The Iowa will, alone, produces no such result.

We are irresistibly forced to the conclusion that it was not the intention of the testator, by his Iowa will, to revoke the Illinois will. We believe that the words of revocation in the Iowa will were intended by the testator to apply only and be limited, like the will itself, to the property which it disposed of.

We believe the chancellor did not err in his holding and the decree of the circuit court of Lee county is affirmed.

*Decree affirmed.*

WILSON, C.J., and FARTHING, J., dissenting.