ROSEMARY COUSSEE, Petitioner-Appellee, v. ESTATE OF JAMES EFSTON *et al.*, Respondents-Appellants.

First District (4th Division)    No. 1—92—2869

Opinion filed February 17, 1994.—Modified on denial of rehearing May 19, 1994.

Keith E. Morehead and Jon R. Flynn, both of Morehead & Flynn, of Chicago, for appellants.

Donald X. Murray and Donald V. O'Brien, both of O'Brien, O'Rourke, Hogan & McNulty, of Chicago, for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

James Efston died leaving two testamentary documents, both purporting to be his will: one was executed in Illinois in 1975, the other in Greece in 1986. Petitioner Rosemary Coussee, a beneficiary under the 1975 will only, brought this action to construe the two wills. The trial court found the wills revealed one testamentary scheme and gave effect to both. Efston's estate appeals, alleging the revocation clause in the 1986 will revokes the 1975 will. We agree and reverse.

James Efston, a Greek national, spent most of his adult life as a businessman in Illinois. He owned property in Illinois and Greece. In 1975, he executed a will in Illinois with two substantive clauses. He first gave $75,000 to Rosemary Coussee, the petitioner in this case. He then named his two nieces and his nephew as beneficiaries under a residuary clause which disposed of the rest of his estate. He also named Nicholas Limperis, the attorney who drafted the will, and Eleni Charles, a niece, as co-executors.

In January 1986, Efston gave up his apartment in Chicago and moved to Greece. In April of 1986, without notifying Limperis, Efston executed a will in Greece. The Greek will contained this language:

"In Athens, today April 21 1986, I *** (JAMES EFSTON) *** wishing to regulate my real and personal estate situated in Greece after my death, I appoint and place as sole ans [*sic*] exclusive heir of this, i.e. my real and personal estate which will be found in Greece, my beloved sister Marika Efstathiou ***.

In such case that my sister predeaceses [*sic*] me, I appoint as my heirs, the children of my sister Vassiliki Tsoli ***:

a. Fifi Demos *** resident of Chicago—Illinois—U.S.A., to receive a share of 45% of my real and personal estate situated in Greece after my death.

b. Eleni Charles *** resident of Chicago—Illinois—U.S.A., to receive a share of 45% of my real and personal estate situated in Greece after my death.

c. Constantinos Tsolis *** resident of Chicago—Illinois—U.S.A., to receive a share of 10% of my real and personal estate situated in Greece after my death.

*By this document I revoke any former Will made by me, whenever it may have been made, and wherever it may be situated.*
***

This is my last Will, which I wish my heirs to respect." (Emphasis added.)

The Greek will did not contain a residuary clause.

Efston died on September 25, 1989, in Athens, Greece. Four relatives survived him: his sister, Marika, a resident of Greece; his nephew, Constantine Tsolis, a resident of Illinois; and his nieces, Fifi Demos and Eleni Charles, residents of Illinois.

The respondents, including Efston's attorney Limperis and Efston's two nieces and nephew, filed a petition to probate the Illinois will. The court issued letters of office on October 27, 1989, to Limperis and Eleni Charles, married as Helen Childs.

In January of 1990, Limperis received a copy of the Greek will in the mail from Efston's Greek lawyer. At a meeting, Limperis told the beneficiaries of the Illinois will, including Coussee, that the later Greek will revoked the Illinois will. Limperis explained that Illinois property not included in the Greek will would pass by the rules of intestacy, as the Greek will contained no residuary clause. Because Coussee was not a beneficiary under the Greek will, this interpretation meant that she would receive nothing from Efston's estate.

Limperis asked Coussee to disclaim any interest in Efston's estate by signing a waiver. Coussee admits that she orally agreed to do so. However, after Limperis sent Coussee a letter and waiver form in March of 1991, Coussee decided to speak to an attorney. Her attorney informed her that Limperis' reading of the second will was a matter of opinion and that the second will did not necessarily revoke the first will. Coussee then refused to sign the waiver of interest form.

In April of 1991, Coussee petitioned for an order of distribution directing the executors of the 1975 Illinois will to pay Coussee her $75,000 legacy under that will. Efston's estate responded by pleading the existence of the later Greek will, contending that the revocation clause in the Greek will revoked the Illinois will. Coussee then filed a second petition, asking the court to construe both wills.

If both wills are given effect, Coussee receives the $75,000 bequest under the Illinois will, Efston's nieces and nephew will take the remainder of the Illinois estate under the residuary clause in the Illinois will, and Efston's sister Marika will take the Greek estate under the Greek will.

If the Greek will revokes the Illinois will, Efston's sister Marika will take the entire Greek estate, and the Illinois estate passes by intestacy. In Illinois, if an intestate decedent does not leave a spouse or descendants, then surviving brothers and sisters take the estate in equal parts. Descendants of a deceased brother or sister will divide the deceased brother's or sister's portion *per stirpes*. (755 ILCS 5/2—1(d) (West 1992).) Efston's sister will therefore take half of the Illinois estate, and his nieces and nephew will divide the other half equally. Under this reading, Coussee will receive nothing.

Both parties offered evidence to prove Efston's intent in executing the wills. Coussee argued that Efston could not have intended the Greek will to revoke the Illinois will because of her close business and personal relationship with him. Coussee acted as personal secretary, friend, and sometime social companion to Efston for 40 years. There was no evidence of a breakdown in their relationship before Efston died.

Limperis testified that he told Efston that his sister in Greece was excluded by the Illinois will as drafted. Efston responded by directing Limperis to leave the will as drafted and stating that he, Efston, "would take care of things in Greece."

Efston's relatives argued that Efston's desire to revoke the Illinois will was clear from the face of the Greek will and that no other evidence should be examined by the court. As an alternative argument, they offered evidence that the value of Efston's estate in Illinois had dwindled to almost nothing about the time the Greek will was executed. This, along with evidence that Efston put substantial sums in bank accounts for Coussee, was offered to explain why the Illinois will was revoked and why Coussee was not included in the Greek will. Coussee responded with proof that the value of Efston's estate in Illinois fluctuated regularly, and that although it dipped about the time the Greek will was executed, it rose substantially in later years.

The court ruled that Efston intended the Illinois will to dispose of property in Illinois and the Greek will to dispose of property in Greece. The court found that the revocation clause in the Greek will was intended only to revoke prior Greek wills. Both wills were given effect by the court, and Coussee's legacy of $75,000 under the Illinois will was upheld. Efston's estate appealed.

■ In interpreting a will, the court's sole purpose is to give effect to the intent of the testator. (*In re Estate of Kirchwehm* (1991), 211 Ill. App. 3d 1015, 570 N.E.2d 851.) The language of a will is the best proof of that intent. *De Korwin v. First National Bank* (7th Cir. 1949), 179 F.2d 347; *In re Estate of Miller* (1992), 230 Ill. App. 3d 141, 595 N.E.2d 630.

The threshold question in a suit to construe a will is whether or not construction of the will is necessary. (See *Young v. Whisler* (1960), 19 Ill. 2d 501, 167 N.E.2d 191.) Only if a court finds that a will is ambiguous will it entertain an action to construe a will. *In re Estate of Smith* (1990), 198 Ill. App. 3d 400, 555 N.E.2d 1111.

■ A will is ambiguous if the testator's intent is unclear because words in the will can be given more than one meaning or are in conflict. (4 W. Bowe & D. Parker, Page on Wills § 32.2, at 238-39 (4th ed. 1961); see also *Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d

440, 581 N.E.2d 664.) An ambiguity can appear on the face of a will or when attempting to implement a will's provisions. (*Hays v. Illinois Industrial Home for the Blind* (1958), 12 Ill. 2d 625, 147 N.E.2d 287.) A latent ambiguity occurs when the will appears clear on its face but some fact external to the will reveals that a description of a bequest or of a legatee in the will is inadequate to determine who or what was intended by the testator. *In re Estate of Laas* (1985), 134 Ill. App. 3d 504, 480 N.E.2d 1183.

For the threshold determination of whether or not a will is ambiguous, the court may examine only the four corners of the will and evidence brought by the parties which tends to show a latent ambiguity. *In re Estate of Powers* (1983), 117 Ill. App. 3d 1087, 454 N.E.2d 384; *In re Estate of Smith* (1990), 198 Ill. App. 3d 400, 555 N.E.2d 1111.

■ Efston's estate argues that the revocation clause in the Greek will clearly revokes the Illinois will and that no construction of the wills is necessary. It further contends that because no construction is necessary, the circuit court lacked subject matter jurisdiction to consider petitioner's claim. While some cases have discussed this issue in terms of jurisdiction (*Peck v. Drennan* (1951), 411 Ill. 31, 103 N.E.2d 63), we believe it more precise to say that once a court determines that no ambiguity exists in a will, an action for construction should be dismissed. *In re Estate of Laas* (1985), 134 Ill. App. 3d 504, 480 N.E.2d 1183.

If a court finds that a will is ambiguous, however, the action for construction continues, and the court is given greater latitude to determine the testator's intent. The court may apply rules of construction to the will (*Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 513 N.E.2d 833), and the court may examine extrinsic evidence relevant to the testator's intent to resolve the ambiguity. *Weir v. Leafgreen* (1962), 26 Ill. 2d 406, 186 N.E.2d 293; *King v. Travis* (1988), 170 Ill. App. 3d 1036, 524 N.E.2d 974.

In this case, the court construed both wills after examining extensive extrinsic evidence, including the testimony of the drafter of the Illinois will and the testimony of several of the beneficiaries.

We believe the trial court erred by examining this evidence without first identifying an ambiguity in the wills. (*In re Estate of Miller* (1992), 230 Ill. App. 3d 141, 595 N.E.2d 630.) In any event, we have been unable to find an ambiguity in either will. Neither will contains a clause which contradicts or otherwise subverts any other portion. Also, no ambiguity is hidden in either will's description of property or of a beneficiary.

■ The revocation clause in the Greek will is clear and unambig-

uous: "By this document I revoke any former Will made by me, whenever it may have been made, and *wherever it may be situated.*" (Emphasis added.) The existence of a former will does not bring this clause into suspicion or create an ambiguity. The validity and effectiveness of an express revocation clause is provided for by statute. (755 ILCS 5/4—7(a)(2) (West 1992).) A revocation clause is generally taken to mean what it says. (*In re Will of Westerman* (1948), 401 Ill. 489, 82 N.E.2d 474.) A revocation clause will be effective even if it leaves part of the testator's estate to pass intestate. *Ennis v. Smith* (1853), 55 U.S. (14 How.) 400, 421, 14 L. Ed. 472, 482.

Petitioner responds that revocation clauses, like any other portion of a will, are not immune from interpretation. (See *Allen v. Beemer* (1939), 372 Ill. 295, 23 N.E.2d 724; *In re Will of Grant* (1972), 70 Misc. 2d 1024, 334 N.Y.S.2d 780; *In re Will of Smith* (1930), 254 N.Y. 283, 172 N.E. 499 (cases where revocation clauses have not been given effect).) In *Allen*, the testator died with two wills, executed 35 days apart. The first will disposed only of the testator's property in Illinois, and the second will only of the testator's property in Iowa. The Iowa will contained a clause "revoking any and all former wills by me made." (*Allen*, 372 Ill. at 299.) The Illinois will devised the testator's farm to his son and his son's children. The Iowa will directed that all funeral expenses "shall be paid out of my estates, both that in Illinois and that in Iowa, so that each of my children shall share equally in such funeral expenses." (*Allen*, 372 Ill. at 299.) The *Allen* court saw that the intent expressed in the funeral expenses clause in the Iowa will could only be met if the devise of the farm to the son in the Illinois will was given effect. So, the court found a patent ambiguity which permitted consideration of extrinsic evidence: "This clause [the funeral expenses clause] cannot stand side by side with the revoking clause and it follows that one or the other must be modified by construction." *Allen*, 372 Ill. at 306.

■ There is no similar ambiguity in the Illinois or Greek will before us which would allow an examination of the wealth of extrinsic evidence offered by the parties. Contrary to petitioner's analysis, our job of discerning a testator's true intention is not merely a weighing of all the facts and circumstances which may bear on the testator's intent. Such a reading of the law minimizes the significance of the will itself, the document signed by the testator to represent his intentions. A party does not create an ambiguity and thereby open the door to extrinsic evidence merely by offering evidence that the testator did not intend to say what is otherwise clearly stated in a will. (4 W. Bowe & D. Parker, Page on Wills § 32.11, at 282 (4th ed. 1961); *Phelps v. La Moille* (1964), 52 Ill. App. 2d 164, 201 N.E.2d 634;

*Peters v. Gebhardt* (1955), 6 Ill. 2d 534, 129 N.E.2d 731.) In no case may evidence extrinsic to the will be utilized by the court to contradict or vary an intention of the testator which is clear and unambiguous. *Appleton v. Rea* (1945), 389 Ill. 222, 58 N.E.2d 854; *In re Estate of Rosta* (1982), 111 Ill. App. 3d 786, 444 N.E.2d 704.

▪ Coussee also argues that Efston did not intend the Illinois estate to pass by intestacy, since such an interpretation benefits his sister, who will receive the entire Greek estate. It is true that when construing a will, a court presumes the testator did not intend any property to pass intestate. (*In re Estate of Cancik* (1985), 106 Ill. 2d 11, 476 N.E.2d 738.) As a rule of construction, however, the presumption against intestacy only comes into play after an ambiguity is found. (*Harris Trust & Savings Bank v. Jackson* (1952), 412 Ill. 261, 106 N.E.2d 188; *In re Estate of Reiman* (1983), 115 Ill. App. 3d 879, 450 N.E.2d 928.) Regardless, the presumption does not override clear and unambiguous language in a will, like the revocation clause in this case. *Foss v. State Bank & Trust Co.* (1931), 343 Ill. 94, 175 N.E. 12.

▪ Coussee finally argues that the trial court lacked jurisdiction to consider the Greek will because a will must be contested within six months of its entry into probate. Section 8—1 of the Probate Act of 1975 provides: "Within 6 months after the admission to probate of a *** will *** any interested person may file a petition *** to contest the validity of the will." (Ill. Rev. Stat. 1989, ch. 110¹/₂, par. 8—1(a).) The Illinois will was admitted to probate on October 27, 1989. Efston's estate filed its first petition to admit the Greek will on May 23, 1991. Coussee argues that by raising a subsequent will which purports to revoke a will already admitted to probate, the action is in the nature of a will contest and subject to the six-month time limitation. We disagree. Although it is generally true that an allegation that a will has been revoked is considered a will contest (*In re Estate of Moerschel* (1980), 86 Ill. App. 3d 482, 407 N.E.2d 1131), where the revocation is based upon the existence of a subsequent will not lost or destroyed, the proper action is to seek admission of the subsequent will to probate as the last will of the decedent. (*Crooker v. McArdle* (1928), 332 Ill. 27, 163 N.E. 384; *Abdill v. Abdill* (1920), 295 Ill. 40, 128 N.E. 741.) The appellate court has read *Crooker* and *Abdill* to hold that the admission of a subsequent will or codicil to a will already admitted to probate is not a collateral attack on the order admitting the original will to probate. (*In re Estate of Francoeur* (1972), 8 Ill. App. 3d 567, 290 N.E.2d 396.) So we believe respondents were not bound by the six-month time limit governing will contests when they sought probate of the subsequent Greek will.

We reverse the decision of the trial court and remand for an entry of an order dismissing petitioner's action to construe the two wills. *In re Estate of Miller* (1992), 230 Ill. App. 3d 141, 595 N.E.2d 630.

Reversed.

JOHNSON and HOFFMAN, JJ., concur.