2016 IL App (1st) 142500

No. 1-14-2500

Fifth Division
Modified opinion filed March 11, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF ALBERT LELLO, Deceased | ) ) ) | Appeal from the Circuit Court |
| (Lawrence Webster Harris II, Virginia M. Harris, | ) | of Cook County. |
| Jeanette Harris, and Marjorie Anne James, | ) | |
| Petitioners-Appellants, | ) | No. 12 P 6237 |
| | ) | |
| v. | ) | The Honorable |
| | ) | John J. Fleming, |
| Luzminda R. Lello, Ex'r of the Estate of Albert Lello, | ) | Judge Presiding. |
| Deceased; and Rita Sapko, | ) | |
| Respondents-Appellees). | ) | |
| | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant appeal arises from the probate court's denial of petitioners' petition for construction of decedent Albert Lello's will upon a finding that the will was unambiguous. Decedent left the entirety of his estate to two of his sisters and his wife, "to share and share alike in equal shares or to the survivor or survivors of them." One of the sisters predeceased decedent, and upon decedent's death, petitioners, who are the sister's children, argued that they were entitled to her share of decedent's estate. The probate court disagreed, finding that

the will created a class gift that resulted in the deceased sister's share being divided between the two remaining named legatees. For the reasons that follow, we affirm.

¶ 2                                                      BACKGROUND

¶ 3        Decedent Albert Lello died on October 2, 2012, at age 88, and on October 26, 2012, Luzminda Lello, decedent's wife, filed a petition for probate of decedent's June 25, 2005, will. On November 13, 2012, the probate court admitted the will to probate and appointed Luzminda as independent executor of the estate. On the same day, Luzminda filed an affidavit of heirship stating that she was decedent's wife and decedent had no children, either from their marriage or from his former marriage; and the probate court entered an order declaring Luzminda to be decedent's only heir.

¶ 4        Decedent's will was a three-page document, signed by decedent on June 25, 2005.[1] The will contains two preamble paragraphs, the second of which provides:

> "In making this Will, I have borne in mind the various members of my family and have carefully considered all of my property, real, personal and mixed, wheresoever situated, and have made what I consider the wisest and most just disposition of such property, and it is my will and express intention that my said property be disposed of only as hereinafter provided, upon such trusts and for such uses and for the benefit of such persons as are hereinafter set forth, and such members of the family as are not mentioned herein have not been overlooked, but have been intentionally omitted."

The will then sets forth six paragraphs disposing of decedent's property and naming Luzminda as the executor of his estate. The fourth paragraph is the paragraph challenged on appeal, and it provides in full:

---

[1] The record reflects that decedent's will was drafted by an attorney.

"FOURTH: After the payment of all my just debts, cost of administration, taxes of every nature, if any, I hereby give, devise and bequeath my entire estate, be it real, personal or mixed, wheresoever situated, of whatsoever kind or nature, of which I may die seized or possessed, or to which I may be entitled to at the date of my death, as follows:

To my sister, VIRGINIA HARRIS, to my sister, RITA SAPKO, and to my wife, LUZMINDA R. LELLO, to share and share alike in equal shares or to the survivor or survivors of them."

The record reflects that decedent was one of 12 children, and that at the time of the will's execution, only Virginia, Rita, and one other sister (who was not named in decedent's will) remained living. The record also reflects that decedent had a number of nieces and nephews.

¶ 5    On May 7, 2013, petitioners, the four children of Virginia Harris, filed a petition for construction of the will, alleging that they were persons who could be entitled to an interest in decedent's estate. The petition alleges that Virginia predeceased decedent and the probate court was required to determine whether Virginia's share of the estate passed to her heirs or to Rita and Luzminda. Petitioners advocated for the former reading, arguing that petitioners, Virginia, and decedent "had a good and close ongoing family relationship" and that "[f]or many years [decedent] lived in the same building with his two (2) sisters and their families and [decedent] treated all of his nieces and nephews equally as though they were his own children."

¶ 6    On May 9, 2013, Luzminda renounced any benefits afforded to her under the will and chose to take her statutory share of the estate.

¶ 7    On June 13, 2013, Rita filed a motion to dismiss the petition for construction of the will pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), arguing that the petition was legally insufficient because petitioners' interpretation of the will was unsupported by Illinois law. Rita argued that decedent's will created a class gift, so upon Virginia's death, her share passed to Rita and Luzminda, the surviving members of the class.

¶ 8    On September 25, 2013, the probate court denied the motion to dismiss the petition for construction of the will. On the same day, the probate court granted Luzminda leave to file an amended petition for probate of decedent's will, which updated the value of decedent's estate to approximately $8.2 million.

¶ 9    On March 21, 2014, Luzminda filed a motion to declare the will unambiguous as a matter of law and Rita filed a memorandum of law in support of finding no ambiguity. Also on March 21, 2014, petitioners filed a motion for summary judgment on their petition for construction of the will, asking the probate court to find that the will was ambiguous as a matter of law and that it should be construed such that petitioners were entitled to Virginia's share of decedent's estate *per stirpes*.

¶ 10    On June 10, 2014, the probate court entered an order denying petitioners' petition for construction of the will, finding that "the will of Albert Lello, deceased, is hereby declared UNAMBIGUOUS as a matter of law" (emphasis in original), and further finding that there was "no latent or patent ambiguity."

¶ 11    On July 10, 2014, petitioners filed a motion to reconsider, which was denied by the probate court on July 24, 2014. In denying the motion to reconsider, the probate court made it clear that its June 10 ruling was limited to a finding that there was no ambiguity within the

four corners of the will. It expressly noted that it had not made any rulings considering petitioners' hypothetical arguments about the consequences of all three named legatees predeceasing decedent.

¶ 12        This appeal follows.

¶ 13                                ANALYSIS

¶ 14        On appeal, petitioners argue that the probate court erred in finding decedent's will to be unambiguous in creating a class gift to the named legatees. "The threshold question in a suit to construe a will is whether or not construction of the will is necessary." *Coussee v. Estate of Efston*, 262 Ill. App. 3d 419, 423 (1994). "Only if a court finds that a will is ambiguous will it entertain an action to construe a will." *Coussee*, 262 Ill. App. 3d at 423. "[O]nce a court determines that no ambiguity exists in a will, an action for construction should be dismissed." *Coussee*, 262 Ill. App. 3d at 424. In the case at bar, the probate court found that decedent's will was unambiguous and, therefore, dismissed petitioners' petition for construction of the will.

¶ 15        "In interpreting a will, the court's sole purpose is to give effect to the intent of the testator. [Citation.] The language of a will is the best proof of that intent. [Citations.]" *Coussee*, 262 Ill. App. 3d at 423. "A will is ambiguous if the testator's intent is unclear because words in the will can be given more than one meaning or are in conflict." *Coussee*, 262 Ill. App. 3d at 423. "An ambiguity can appear on the face of a will or when attempting to implement a will's provision." *Coussee*, 262 Ill. App. 3d at 424. "For the threshold determination of whether or not a will is ambiguous, the court may examine only the four corners of the will and evidence brought by the parties which tends to show a latent ambiguity." *Coussee*, 262 Ill. App. 3d at 424.

5

¶ 16  In the case at bar, petitioners argue that paragraph four of decedent's will is ambiguous and that the proper interpretation is that decedent's intent was for Virginia's share of the estate to pass to petitioners, not to Rita and Luzminda. As noted, the fourth paragraph of decedent's will provides in full:

> "FOURTH: After the payment of all my just debts, cost of administration, taxes of every nature, if any, I hereby give, devise and bequeath my entire estate, be it real, personal or mixed, wheresoever situated, of whatsoever kind or nature, of which I may die seized or possessed, or to which I may be entitled to at the date of my death, as follows:
>
> To my sister, VIRGINIA HARRIS, to my sister, RITA SAPKO, and to my wife, LUZMINDA R. LELLO, to share and share alike in equal shares or to the survivor or survivors of them."

The question the probate court was asked to determine was the meaning of the phrase "to share and share alike in equal shares or to the survivor or survivors of them." We agree with its conclusion that this language establishes a class gift, meaning that upon Virginia's death, Rita and Luzminda would be entitled to Virginia's share of the estate. See 755 ILCS 5/4-11(b) (West 2012) ("Unless the testator expressly provides otherwise in his will, *** (b) if a legacy of a present or future interest is to a class and any member of the class dies before or after the testator, the members of the class living when the legacy is to take effect in possession or enjoyment take the share or shares which the deceased member would have taken if he were then living[.]"); *In re Estate of Kirchwehm*, 211 Ill. App. 3d 1015, 1019 (1991) ("When the term 'survivor' is used in conjunction with a gift to a group or class of beneficiaries as in this case, under the common law, that term is deemed to indicate the

intention of the testator that, should any member of the class predecease the testator, the share of the deceased beneficiary goes to the remaining named members of the class, rather than to the children or issue of the deceased beneficiary.").

¶ 17    Our supreme court has stated that "[a] gift to a class is defined *** as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." (Internal quotation marks omitted.) *O'Connell v. Gaffney*, 23 Ill. 2d 611, 616-17 (1962). "One of the essential features of a class gift is that the number of the persons who are to take the property is to be ascertained at a future time. A gift to persons who are both numbered and named in the language of gift is prima facie or by initial presumption a gift to them as individuals notwithstanding they are also designated in general terms as by relationship to the testator to others." *O'Connell*, 23 Ill. 2d at 617. In *O'Connell*, for instance, the supreme court found no class gift where the testator's will provided that half of his estate was to " 'be paid in equal shares, to my two brothers, James Gaffner and Edward Gaffney of Ireland.' " *O'Connell*, 23 Ill. 2d at 613. The court there noted that "[i]n our opinion, nothing appears from the general plan of disposition, or from any special relationship of [the testator] to his two brothers, or from the failure of [the testator] to change his will after the death of Edward to overcome the initial presumption that the gift was to James and Edward as individuals." *O'Connell*, 23 Ill. 2d at 617. "The decisive inquiry is whether or not the testator, in making the particular gift in question, did so with group-mindedness, whether in other words, he was looking to the body of persons in question as a whole or unit rather than

to the individual members of the group as individuals; if the former, they take as a class." (Internal quotation marks omitted.) *Krog v. Hafka*, 413 Ill. 290, 299 (1952).

¶ 18      In the case at bar, paragraph four of decedent's will names the three legatees. Accordingly, the initial presumption is that decedent's bequest to each of them is an individual gift, unless there is something additional contained in the will to rebut that presumption. See *Brown v. Leadley*, 81 Ill. App. 3d 504, 507 (1980) ("Illinois cases seem clear that a gift to persons named is a gift to them individually and not a class gift unless reasons are found in the will for deciding that the testator's intent would best be served by disregarding the rule."). In the case at bar, there is: the survivorship language contained at the end of paragraph four, which provides that the bequest is to the three named legatees "to share and share alike in equal shares or to the survivor or survivors of them."

¶ 19      Illinois courts have considered similar language several times, and have found that such language indicates a class gift, with a deceased legatee's share passing to the surviving legatees. For instance, in *Waugh v. Poiron*, 315 Ill. App. 78, 79 (1942), the court was asked to interpret a will containing a residuary clause that provided:

> " 'I give, devise and bequeath the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situated, to my brother, James W. Poiron, my sister, Minnie Hodge, my sister, Annie Enslin, and my niece Ethel Seidal [*sic*], share and share alike, and to the survivor of them.' "

At the time of the testator's death, Ethel was the only legatee still living, and contended that she was entitled to the entire residue of the estate. *Waugh*, 315 Ill. App. at 79. By contrast, the children of James and Minnie argued that the phrase " 'and to the survivor of them' "

should be construed to give each of them the portion of the estate to which their parents would have been entitled. *Waugh*, 315 Ill. App. at 79.

¶ 20      While the probate court agreed with the children, the appellate court reversed, finding that Ethel was entitled to the entire residue. *Waugh*, 315 Ill. App. at 80. The court pointed to "the precise nature of the paragraph," noting:

> "It is complete in a single sentence. The testatrix says, 'I give the rest, residue and remainder to my brother James, my sister Minnie, my sister Annie, and my niece Ethel, share and share alike, and to the survivor of them.' Webster says 'survivor' means 'to live longer than'. Here the word 'survivor' is modified by the phrase 'of them'. 'Them' manifestly refers to James, Minnie, Annie and Ethel. The 'survivor of them' is Ethel, because she lived after the death of the other. 2 Bouvier's Law Dict., Rawle's Third Rev., defines a 'survivor' as 'the longest liver of two or more persons'. Of the four names in the residuary clause, Ethel Seidel lived longest and was the only one of the four living at the death of the testatrix. It would seem nothing could be clearer than that she is 'the survivor of them'." *Waugh*, 315 Ill. App. at 80-81.

The court further noted that the will was prepared by a lawyer and that the language of the paragraph "is not the language a lawyer would use, assuming the testatrix made known to him her intention to provide for this distribution to the children in case of the death of their parent." *Waugh*, 315 Ill. App. at 81. The court noted that, "[t]herefore, not only the actual language used but also the language not used makes quite impossible the construction adopted by the decree." *Waugh*, 315 Ill. App. at 81. The court also pointed to another clause in which the testator had left two individuals bequests of $1, noting that "[b]y this clause she practically disinherits these two, who if the trial court had carried his theory of construction

to its logical conclusion would ([since] Annie Enslin [had died] intestate) take a substantial part of the estate," a construction that "[t]he courts will not sustain." *Waugh*, 315 Ill. App. at 81. The court also dismissed citations to authority concerning the issue of whether the will contained a class gift, noting: "Nor is there any question here of whether the residuary legacy is a gift to a class or distribution to named individuals. That question is eliminated by the clause 'and to the survivor of them'. The numerous cases cited involving that question are therefore without value." *Waugh*, 315 Ill. App. at 82.

¶ 21    Similarly, in *Estate of Carlson*, 39 Ill. App. 3d 281 (1976), the will at issue was construed in the same way. There, the will provided:

> " 'All the rest, residue and remainder of my estate of every kind and nature, I hereby give, devise and bequeath to my wife, Adina V. Carlson. In the event that my said wife should die prior to my death, or if we both die as a result of the same accident or catastrophe, then I give, devise and bequeath all of my property of every kind and nature to my niece and nephew, Barbara Ann Carlson and Bernard D. Carlson, and the nephew of my wife, William Perry Filbert, or their survivors or survivor, share and share alike.' " *Carlson*, 39 Ill. App. 3d at 282.

The testator's wife predeceased him, as did his nephew Bernard. The administrator of the will construed the quoted language to exclude Bernard's child from the class of persons designated " 'their survivors or survivor.' " *Carlson*, 39 Ill. App. 3d at 282.

¶ 22    The appellate court stated that the principal issue was "whether the words 'their survivors or survivor, share and share alike', viewed within the four corners of the will, create an ambiguity which requires construction of the will." *Carlson*, 39 Ill. App. 3d at 283. The court noted that "[w]hen the term 'survivor' is used in conjunction with a gift to a group or class of

beneficiaries, under the common law the survivorship clause of the will is deemed to indicate the intention of the testator that, should any member of the class predecease the testator, the share of the deceased beneficiary goes to the remaining named members of the class, rather than to th[e] children or issue of the predeceased beneficiary." *Carlson*, 39 Ill. App. 3d at 284. The court also found the decision in *Waugh* persuasive, noting that the language used in that will was similar and that, like in *Waugh*, the bequest in *Carlson* was contained in a single sentence. *Carlson*, 39 Ill. App. 3d at 284. Accordingly, the court found that there was no ambiguity in the will and affirmed the probate court's dismissal of the child's suit. *Carlson*, 39 Ill. App. 3d at 285.

¶ 23    In the case at bar, the language of decedent's will is strikingly similar to the language present in both *Waugh* and *Carlson*. Here, decedent bequeathed his entire estate "[t]o my sister, VIRGINIA HARRIS, to my sister, RITA SAPKO, and to my wife, LUZMINDA R. LELLO, to share and share alike in equal shares or to the survivor or survivors of them." Almost identical language was used in both of those cases. See *Waugh*, 315 Ill. App. at 79 (bequeathing the testator's estate to several named individuals " 'share and share alike, and to the survivor of them' "); *Carlson*, 39 Ill. App. 3d at 282 (bequeathing the testator's estate to several named individuals " 'or their survivors or survivor, share and share alike' "). Furthermore, as in both *Waugh* and *Carlson*, decedent's bequest in the case at bar was contained in a single sentence. Additionally, as in *Waugh*, the will in the instant case was drafted by an attorney and, "[t]herefore, not only the actual language used but also the language not used makes quite impossible the construction adopted by the decree." *Waugh*, 315 Ill. App. at 81. The will here does not use the terms "heirs," "descendents," "children," "issue," "*per stirpes*," or any other language that would indicate that a predeceased legatee's

11

share was intended to pass to her children.[2] Indeed, the second preamble paragraph expressly provides that "it is [decedent's] will and express intention that [his] said property be disposed of only as hereinafter provided, *** for the benefit of such persons as are hereinafter set forth, and such members of the family as are not mentioned herein have not been overlooked, but have been intentionally omitted." Accordingly, we agree with the *Waugh* and *Carlson* courts that this language means that a class gift was created and that upon Virginia's death, her share of the estate passed to Rita and Luzminda.

¶ 24        We do not find petitioners' attempt to distinguish *Waugh* and *Carlson* persuasive. With respect to *Waugh*, petitioners claim that the reversal in that case "was directly attributable to the possibility of the two effectively disinherited $1 heirs taking half the estate though their Aunt Annie's intestate share" and that the ruling merely contained "a long course *in dictum* on the meaning of a survivorship clause in the absence of the testator's intent to benefit the heirs of named legatees." Petitioners misconstrue the holding in *Waugh*, as well as the *Waugh* court's reasoning. The court discussed the language of the survivorship clause first and determined that "[o]f the four names in the residuary clause, Ethel Seidel lived longest and was the only one of the four living at the death of the testatrix. It would seem nothing could be clearer than that she is 'the survivor of them'." *Waugh*, 315 Ill. App. at 81. Thus, rather than being "a long course *in dictum*," *Waugh*'s discussion of the survivorship clause was central to its holding that Ethel was the sole beneficiary by virtue of being the sole legatee surviving at the testator's death. Further, while the *Waugh* court did discuss the implications of the probate court's conclusion in light of the effective disinheritance of the other two individuals, this was not the focus of the court's decision, nor do we find that it

---

[2] Petitioners argue that "the poor quality of draftsmanship is palpable" and that competence of the attorney should not be assumed. However, other than petitioners' argument that this paragraph of the will is ambiguous, petitioners provide no evidence of the attorney's incompetence and we will not draw such a conclusion.

lessens the applicability of that case to the case at bar. Indeed, in light of decedent's statement in the will's prefatory clause that "such members of the family as are not mentioned herein have not been overlooked, but have been intentionally omitted," reading paragraph four to provide a bequest to petitioners could be read as giving a bequest to individuals who have been expressly disinherited, a construction that the *Waugh* court noted that "[t]he courts will not sustain." *Waugh*, 315 Ill. App. at 81. As the *Waugh* court stated: "These four who now claim as nieces and nephew were living at the time the will was made. Their parent legatees passed away while the testatrix was still living and (presumably) competent to change her will in case she wished to do so." *Waugh*, 315 Ill. App. at 81-82. The exact same situation remains true here.

¶ 25    Petitioners further claim that *Waugh* and *Carlson* are distinguishable because they do not contain the precise language present in the instant case, pointing to the fact that the wills in those cases did not specify "equal shares" as in the instant case. However, the size of each individual's share was not relevant to the court's decision in either *Waugh* or *Carlson*. The important language was the survivorship language. The same is true here.

¶ 26    We are similarly unpersuaded by petitioners' arguments that there was no class created based on *Estate of Garrett*, 325 Ill. App. 3d 123 (2001), which they characterize as "[t]he leading case in Illinois on determining whether a class gift is created." However, the weight petitioners place on *Garrett* is not borne out by the case itself, which is readily distinguishable from the case at bar. In that case, the single dispositive paragraph of the testator's will provided:

"  'I direct the executor hereinafter named to divide my estate into twelve equal shares. I give, devise and bequeath one share to each of the following: Grace Ella

Powers, Lora Geneva Bishop, Beulah Leona Jones, Coleman William Bramlett, Cecil Karl Bramlett, John Lloyd Bramlett and Claude Ted Bramlett, share and share alike or to the survivor or survivors of them; one share to the children of my deceased sister, Maude May Brown, per stripes [*sic*] and one share to the children of my deceased sister, Mary Belle Clouse, per stirpes.' " *Garrett*, 325 Ill. App. 3d at 124-25. The executor of the will construed this language to require that only those siblings who survived the testator and those children of Maude May Brown and Mary Belle Clouse who were living at the testator's death would inherit. *Garrett*, 325 Ill. App. 3d at 125. The probate court found that the will created a class gift that required the class members to survive the testator, but certified the question to the appellate court. *Garrett*, 325 Ill. App. 3d at 125.

¶ 27        The appellate court considered the question of whether a class gift had been created and concluded that it had not. The court noted that the testator had first divided her estate into 12 equal shares, then devised one share to each named sibling. *Garrett*, 325 Ill. App. 3d at 126. "Shares were not dependent on persons to be determined in the future; the number of persons, and the share to each, was already ascertained." *Garrett*, 325 Ill. App. 3d at 126. The court further noted that she named her siblings individually, "indicating a gift to each of them, not to a class." *Garrett*, 325 Ill. App. 3d at 126. The court found that all of these factors indicated that a gift to individuals was intended, not a class gift. *Garrett*, 325 Ill. App. 3d at 126. After concluding that the gift was not a class gift, the court determined that the survivorship language present in the will was ambiguous, because "her use of the word 'survivor' [was] not consistent with the rest of the dispositive clause." *Garrett*, 325 Ill. App. 3d at 127. The court noted that "[g]enerally, the use of the word 'survivor' in a will is construed to mean the person who lives the longest out of a group of named individuals."

14

*Garrett*, 325 Ill. App. 3d at 127. However, the court noted that in the sole dispositional clause of the will, the testator left 12 equal shares of the estate to her then-living siblings and the children of her two predeceased sisters and concluded that "[f]rom this bequest, we can infer that [the testator] wished to treat her brothers and sisters and their descendants equally." *Garrett*, 325 Ill. App. 3d at 127. Thus, the *Garrett* court found the will ambiguous. *Garrett*, 325 Ill. App. 3d at 127.

¶ 28    In the case at bar, petitioners use *Garrett* to show that survivorship language does not designate a class gift as a matter of law. We have no quarrel with that statement. However, petitioners also use *Garrett* to argue that paragraph four of decedent's will did not establish a class gift. We do not find that argument persuasive, since the language of the will in *Garrett* differs significantly from the language of the will in the instant case. In *Garrett*, as noted, the estate was first divided into 12 equal shares, then each of those shares was divided amongst the testator's 10 living siblings, named individually, and the children of the testator's two deceased siblings. By contrast, in the case at bar, the individuals were named first, "to share and share alike in equal shares or to the survivor or survivors of them." There was not a specific percentage of the estate apportioned to each of them. The share that the legatee received would depend on how many "survivors" there were at the time of decedent's death. Additionally, there is no reference in the will in the instant case to any children of deceased siblings, which would have also indicated that an individual bequest was intended as opposed to a class gift. Instead, there is a statement that decedent's property should "be disposed of only as herinafter provided, *** for the benefit of such persons as are hereinafter set forth, and such members of the family as are not mentioned herein have not been overlooked, but have been intentionally omitted." Thus, unlike in *Garrett*, where "we can infer that [the

testator] wished to treat her brothers and sisters and their descendants equally" (*Garrett*, 325 Ill. App. 3d at 127), here, the only inference that can be drawn is that decedent did *not* wish to treat the named legatees and his remaining family equally. We find the facts of this case more analogous to *Waugh* and *Carlson* than to *Garrett*, and accordingly, agree with those decisions that the will in the instant case created a class gift.[3]

¶ 29    Additionally, it bears repeating that the second preamble paragraph of the will counsels against reading the will in the way petitioners urge. As noted, that paragraph provides:

>   "In making this Will, I have borne in mind the various members of my family and have carefully considered all of my property, real, personal and mixed, wheresoever situated, and have made what I consider the wisest and most just disposition of such property, and it is my will and express intention that my said property be disposed of only as hereinafter provided, upon such trusts and for such uses and for the benefit of such persons as are hereinafter set forth, and such members of the family as are not mentioned herein have not been overlooked, but have been intentionally omitted."

¶ 28    Petitioners readily agree that this paragraph should be read as decedent "stat[ing] his intent to disinherit all his other relatives." However, petitioners appear to believe that they are not included in the disinheritance of "all his other relatives." The only explanation for this special treatment is petitioners' self-serving allegations in their petition for construction of the will, in which they claim that petitioners, Virginia, and decedent "had a good and close ongoing family relationship" and that "[f]or many years [decedent] lived in the same building with his two (2) sisters and their families and [decedent] treated all of his nieces and nephews equally as though they were his own children." However, again, as the *Waugh* court stated:

---

[3] We also find no merit to petitioners' citation of *Peadro v. Peadro*, 400 Ill. 482 (1948), an Illinois Supreme Court case in which the court was asked to determine whether a will's survivorship clause took effect at the time of the testator's death or at the time of the death of the holder of a life estate in the property bequeathed in the will.

"These four who now claim as nieces and nephew were living at the time the will was made. Their parent legatees passed away while the testatrix was still living and (presumably) competent to change her will in case she wished to do so." *Waugh*, 315 Ill. App. at 81-82. Decedent had a number of nieces and nephews, including petitioners here, and did not provide for any of them by name in his will. Given his express statement that "such members of the family as are not mentioned herein have not been overlooked, but have been intentionally omitted," we cannot agree with petitioners that they, despite being unnamed in the will, were intended to be bequeathed Virginia's share.

¶ 30     Finally, petitioners make several arguments concerning construction of wills and presumptions against intestacy. Petitioners are correct that when construing a will, a court presumes that the testator did not intend any property to pass intestate. *Coussee*, 262 Ill. App. 3d at 426. "As a rule of construction, however, the presumption against intestacy only comes into play after an ambiguity is found." *Coussee*, 262 Ill. App. 3d at 426. In the case at bar, there is no ambiguity, so we have no need to consider petitioners' arguments on this point.

¶ 31     Moreover, even if we were to consider petitioners' arguments, we would find them unpersuasive. Petitioners' main contention is that the trial court should have looked to the consequences of all three named legatees predeceasing the testator. They point to the Probate Act of 1975's antilapse statute, which provides that, "if a legacy lapses by reason of the death of the legatee before the testator, the estate so bequeathed shall be included in and pass as part of the residue under the will, and if the legacy is or becomes part of the residue, the estate so bequeathed shall pass to and be taken by the legatees or those remaining, if any, of the residue in proportions and upon estates corresponding to their respective interests in the residue." 755 ILCS 5/4-11(c) (West 2012). Since the will made no provision for the residue

of the estate, petitioners argue that if all three named legatees predeceased decedent, the estate would fall into intestacy, providing shares of the estate to those of decedent's family whom decedent had expressly disinherited by the second preamble paragraph of the will. While this may be true, in petitioners' hypothetical situation, decedent would still be alive at the time that all three named legatees died, thereby affording him the opportunity to amend his will should be choose to do so. "[T]he testator is presumed to have known the law in force when the will was drafted. [Citation.] The testator is also presumed to know that if any devise in a will does lapse, the property becomes intestate property and all heirs of the testator take." *Noll v. Garber*, 336 Ill. App. 3d 925, 929 (2003) (finding the testator's failure to modify her will after the named legatee's death or to employ a lapse provision in the will "highly probative" of her intent). Thus, even considering petitioners' hypothetical scenario, the probate court did not err in finding no ambiguity in the will.

¶ 32        As a final matter, petitioners argue that the probate court erred in "finding" that the estate would escheat to the State if all three named legatees predeceased decedent. However, the probate court expressly stated that its findings were limited to a finding that there was no ambiguity within the four corners of the will and that it had not make any rulings considering petitioners' hypothetical arguments about the consequences of all three named legatees predeceasing decendent. Accordingly, we will not discuss the propriety of the probate court's response to hypothetical scenarios that were expressly not part of its ruling.

¶ 33                                CONCLUSION

¶ 34        The probate court correctly determined that decedent's will was unambiguous and created a class gift such that Virginia's share of the estate passed to Rita and Luzminda, the

two surviving legatees. Accordingly, the probate court properly dismissed petitioners' petition for construction of decedent's will.

¶ 35    Affirmed.