Earl Shea, Original (Plaintiff) Appellee, v. Stella M. Lyons, et al., Appellees, Margaret C. Waldron, et al., Appellants.

Marie Shea, Individually and Executor of the Last Will and Testament of Earl Shea, Deceased, Substituted (Plaintiffs) Appellees, v. Stella M. Lyons, et al., Appellees, Margaret C. Waldron, et al., Appellants.

**Gen. No. 64–6.**

Third District.

March 26, 1964.

Rehearing denied May 12, 1964.

Berry & O'Conor, of Streator, for appellants.

Hollerich & Hurley, of LaSalle, for plaintiff-appellee.

ROETH, JUSTICE.

This case involves the construction of the will of William M. Shea, who departed this life in 1930. At

the time of his death William M. Shea left surviving him a wife Catherine, a son Earl and two sisters and descendants of four deceased sisters. Catherine Shea subsequently died. The brother of William M. Shea, namely Daniel Shea, named in the will, is also dead and was a bachelor at the time of his death. At the time the original complaint was filed on February 27, 1961, by Earl Shea, the controversy was one between Earl Shea on the one hand, and the living sisters of William M. Shea and descendants of deceased sisters on the other hand, and involved 120 acres of farm land in LaSalle County. After this appeal was initially filed in the Supreme Court on October 31, 1963 (from which court the case on appeal has been transferred to this court following the effective date of the Judicial Article), Earl Shea died testate. The date of his death was December 21, 1963, and letters testamentary were issued March 2, 1964, to his widow Marie Shea. Earl Shea left him surviving, his widow Marie Shea, as his only heir at law. No child or children, no descendant or descendants of any deceased child or children and no adopted child or children or descendants thereof survived Earl Shea. In fact, Earl Shea never did have a child or children. By the will of Earl Shea all of his property was bequeathed and devised to his widow Marie Shea. Since the submission of this case, we have granted leave to substitute Marie Shea individually and as executor as parties plaintiff and appellees, so that the controversy is now between Marie Shea on the one hand and the sisters and descendants of deceased sisters of William M. Shea on the other hand. Although the record does not disclose the date of Daniel Shea's death, it appears to be conceded that he never acquired any interest in the farm.

By his will, William M. Shea disposed of his farm by devising it to his wife, Catherine, for her life and

188

upon her death to his son, Earl, for his lifetime only. There are certain specific provisions as to the disposition of the remainder upon the happening of certain events. The controversy in this case revolves around the sixth, seventh and eighth clauses of the will which are as follows:

"SIXTH: After the death of my said wife, Catherine Shea, my said farm real estate in Dimmick Township shall go and descend unto my beloved son, Earl Shea, for and during his natural lifetime only, subject to the power of sale hereinafter given him and the trusteeship to be thereupon created as hereinafter set forth, in clause eighth. Provided, however, that if prior to the death of my said wife, my son Earl Shea shall have become the father of a child or children, then and in such event, said farm real estate in Dimmick Township shall go and descend unto my said son, Earl Shea, in fee simple, absolutely and forever, after the termination of the life estate hereinabove devised unto my said wife. Provided further, and in the event that my said son, Earl Shea, shall pre-decease my said wife, leaving issue him surviving, then upon the death of my said wife, if said issue survives her also, the said real estate shall go and descend unto such surviving issue of my son, absolutely and forever.

"SEVENTH: In the event that my said son, Earl Shea, shall pre-decease my said wife, and in the further event that no issue of his survives my wife, then upon the death of my said wife my said real estate shall thereupon go and descend unto my brother, Daniel Shea, if he be then living, and in the event that he be not living, then and in such event said real estate shall go and descend unto my surviving sisters, and if one or more of them be not then living, but leave issue

189

her or them surviving, the share of such deceased sister or sisters shall go and descend, per stirpes, to such issue.

"EIGHTH: After the death of my said wife, Catherine Shea, and in the event that my said son, Earl Shea, has not prior to such date, become the father of a child or children, my said son, Earl Shea shall have the right, power and authority, if he so desires, to sell the said farm in Dimmick Township at any price not less than Two Hundred ($200.00) Dollars per acre, and to give a good and sufficient deed therefore.

"The proceeds of any such sale, after deducting the expense thereof, are to be paid over by the buyer or buyers of said farm to the LaSalle National Bank and Trust Company, in trust nevertheless for the following uses and purposes: To invest and re-invest the same in conservative bonds or first mortgages, and after deducting any expense which may be incidental to said trust, to pay over the net income from said investment to my said son, Earl Shea during his lifetime, or until he becomes the father of a child. In the event that if at any time after said trust is created my said son, Earl Shea, becomes the father of a child, then the entire trust estate, if created hereunder, shall go and descend and be paid over immediately to my said son, Earl Shea, and said trust shall thereupon forever cease and terminate. In the event that said trust arises hereunder, and in the further event that no child is born to my said son Earl thereafter, then and in such event upon the death of my said son Earl the entire trust estate shall go and descend and be paid over to my brother, Daniel Shea, if he be then living. If in such event my said brother, Daniel Shea, be not then living, said trust estate shall

190

immediately go and descend and be paid over unto my surviving sisters, and if one or more of them be not living, but leave issue her or them surviving, the share of such deceased sister or sisters shall go and descend, per stirpes, to such issue, and said trust estate shall thereupon forever cease and terminate."

Counsel for all parties agree that there is no *specific* devise of the remainder in the event his son, Earl Shea, survives the testator's wife, Catherine, and has no child or children. Counsel for appellants contend that there is a devise of the remainder by implication to the sisters, and descendants of deceased sisters of William M. Shea, per stirpes. Counsel for Earl Shea (original appellee) contend that the remainder is intestate property and descended to Catherine, the wife, and Earl, the son, and on Catherine's subsequent death the fee became vested in Earl, the son. The trial court construed the will in accordance with the contention of counsel for Earl Shea. If this construction is correct the title to the farm is now vested in Marie Shea (substituted appellee) under the provisions of the will of Earl Shea.

██ ██ The law is well settled in Illinois that a devise or bequest by implication will be sustained, although not made by the will in formal language, when the probability of the intention of the testator to make the gift is so strong that an intention to the contrary cannot be supposed. Devises or bequests by implication are not favored, and must be founded on some expression in the will; they cannot be inferred from silence, and cannot rest on mere conjecture. However, it is not required that the implication, in order to be effective, shall be absolutely irresistible. IPI Wills, Par 221 and cases therein cited.

Equally well established are the rules that law favors the construction of a will which conforms most

nearly to the general law of inheritance. Accordingly, where there is an ambiguity in a will, unless there is a manifest intention to the contrary, the presumption that the testator intended that his property should go in accordance with the laws of descent and distribution will be applied as an aid in construing the will, and a construction which favors heirs at law in preference to persons not so closely related to the testator should be given to the will. In construing a will the presumption is against disinheritance, and, while the testator is allowed to ignore, either in part or altogether, the rules laid down in the statute as to where the estate of a decedent should go, it will not be presumed that it was his intention to disregard the law as it is contained in the statute in any part unless the terms of the will make such intention manifest. The testator's heirs cannot be disinherited on mere conjecture, and when the testator seeks to disinherit them he must express his intention clearly, either by express words *or necessary implication.* However, if disinheritance is manifest from the will, no construction contrary to the manifest language of the will will be permitted. IPI Wills, Par 210. (Emphasis supplied.) See also Pontius v. Conrad, 317 Ill 241, 148 NE 17, which contains a detailed analysis of these general principles. It is to be noted that these last mentioned principles expressly recognize the devise by implication theory. And by "necessary" implication is meant one which results from so strong a probability as to the testator's meaning that an intent contrary to that imputed cannot be supposed.

Analyzing the three clauses of the will hereinbefore set out and keeping in mind the original parties who were involved in this controversy, we find that the happening of certain events and the results to be achieved upon the happening of those events can be categorized as follows:

(1) Event: A child or children born to Earl Shea before the death of testator's wife and Earl Shea survives the wife. Result: Fee of farm vests in Earl Shea at wife's death.

(2) Event: A child or children born to Earl Shea before the death of testator's wife and Earl Shea does not survive the wife but child or children do. Result: Fee of farm vests in child or children at wife's death.

(3) Event: A child or children born to Earl Shea before the death of testator's wife and neither Earl Shea nor child or children survive the wife. Result: Fee of farm vests in testator's sisters, and descendants of deceased sisters at wife's death per stirpes.

At this point it is significant to note that the will of William Shea makes no specific disposition of the fee to the farm as such, upon the happening of either of two events, namely:

(a) If Earl Shea survives the testator's wife and after her death has a child or children.

(b) If Earl Shea dies without ever having had a child or children.

We are of the opinion, however, that the intention of the testator can be gleaned from a consideration of clause eight of his will. This clause gives Earl Shea an optional power of sale of the farm after the wife's death with the provision that the sale moneys shall be placed in trust and the income paid to Earl Shea during his lifetime. The clause specifically recognizes the possibility of Earl Shea having a child or children after the wife's death. The general plan adopted in clauses six and seven is preserved if such an event happens, in that clause eight provides that thereupon Earl Shea shall receive the corpus of the

trust. Likewise the general plan is preserved if such an event does not happen, in that the sisters, and descendants of deceased sisters will receive the corpus of the trust at the death of Earl Shea. Since the sale of the land by Earl Shea is not mandatory it is reasonable to hold that the testator impliedly intended that if Earl Shea elected not to sell the farm and continued to hold the farm, its ultimate disposition should follow the pattern set up for the trust funds in event of a sale. Such a holding is consonant with the general rule that there is a presumption against intestacy. There is an additional compelling reason for the adoption of such a construction. To hold that Earl Shea became the owner of the fee upon the death of his mother Catherine, under the theory advanced by his counsel, would have given him the right to sell the farm during his lifetime without reference to the provisions of clause eight, thereby effectively nullifying those provisions.

Accordingly under the foregoing construction, it now appearing that Earl Shea never had a child or children, and that he never exercised the power of sale under clause eight, the fee to the farm is now vested in testator's surviving sisters and the issue of deceased sisters per stirpes. Marie Shea, the widow of Earl Shea, has no right, title or interest therein.

The decree of the Circuit Court of LaSalle County will be reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

Reversed and remanded.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.