NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230127-U

NO. 4-23-0127

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 20, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SHAWN FORD and SHIRLEYN LAMBERTI, | ) | Appeal from the |
| Plaintiffs-Appellees, | ) | Circuit Court of |
| v. | ) | Greene County |
| GARY D. FITZJARRELL SR., Individually and as | ) | No. 17L1 |
| Trustee of the Marjorie Fitzjarrell First Amended Trust | ) | |
| Agreement Dated June 26, 2008, | ) | Honorable |
| Defendant-Appellant. | ) | Christopher G. Perrin, |
| | ) | Judge Presiding. |

---

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice DeArmond and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court erred in granting plaintiffs' motion for partial summary judgment on claims seeking judicial construction of a trust and declaratory judgment.

¶ 2          Plaintiffs, Shawn Ford and Shirleyn Lamberti, filed a multiple-count action against defendant, Gary D. Fitzjarrell Sr., individually and as trustee of the Marjorie Fitzjarrell revocable trust (Trust), alleging defendant misinterpreted and mismanaged the Trust, depriving plaintiffs of their right to equitable ownership of the Trust estate. They filed a motion for summary judgment with respect to two counts in which they a sought judicial construction of the Trust and a declaratory judgment that identified them as Trust beneficiaries "with equal vested interests in the class gift." The trial court granted plaintiffs' motion and defendant appeals, arguing the court's ruling was inconsistent with the unambiguous language of the Trust and plaintiffs' claims were "not proper" because they did not allege the Trust was ambiguous. Defendant alternatively argues

plaintiffs' claims were barred by the doctrine of *laches*. We reverse and remand for further proceedings.

¶ 3                                                    I. BACKGROUND

¶ 4          In June 2008, Marjorie Fitzjarrell executed a first amended trust agreement, amending and consolidating two prior trusts in her name and creating the Trust at issue. The trust agreement identified (1) Marjorie as the grantor of the Trust, (2) defendant as Marjorie's only child, and (3) plaintiffs and Gary Dean Fitzjarrell II (Gary II) as Marjorie's only grandchildren. Additionally, both Marjorie and defendant were named as cotrustees. Trust property included farm real estate and the following: "All financial assets, personal property and household effects including but not limited to checking accounts, money markets, savings accounts, certificates of deposit, stocks, bonds, titled vehicles, tools, machinery and jewelry."

¶ 5          According to the trust agreement, income and principal of the Trust estate were to be paid at Marjorie's direction during her lifetime. However, if Marjorie were to become incapacitated, defendant, as cotrustee, was empowered to use income and principal of the Trust estate that he determined was "required for the needs, best interests[,] and welfare" of Marjorie and her descendants. Upon Marjorie's death, "all personal and household effects *** such as jewelry, clothing, automobiles, furniture, furnishings, silver, books[,] and pictures" were to be distributed to defendant. The trust agreement further provided for the creation of separate generation skipping tax (GST) trusts for the benefit of Majorie's three grandchildren. Specifically, the trust agreement stated as follows:

          "7.00  Disposition Upon Death of Grantor

                    ***

          7.02   The Grantor hereby gives the available GST Exemption Amount of trust

- 2 -

property to the Trustee to allocate in shares of equal value for the Grantor's grandchildren ***. Allocation for the Grantor's grandchildren under this Section shall be subject to the GST Separate Trust provisions. When making allocations to the GST Separate Trust and Section 7.02, the Trustee shall allocate all real estate to the GST Separate Trust established for the benefit of the Grantor's grandson, [Gary II.]

*  *  *

7.50  GST Separate Trust

Any Trust property allocated for a grandchild of the Grantor's subject to the GST Separate Trust provisions shall be added to or used to fund the principal of three GST Separate Trusts[:] one known as the Shawn L. Ford GST Separate Trust, one known as the Shirleyn J. Lamberti GST Separate Trust[,] and one known as [Gary II] GST Separate Trust. When allocating the property between these three Trusts, all real estate held in this Trust shall be allocated to the [Gary II] GST Separate Trust up to the allowable amount which is one-third of the total GST Exemption Amount. Any excess real estate exceeding the funding amount for the [Gary II] GST Separate Trust shall be distributable under the provisions of Section 7.02 above. The Trustee shall administer each GST Separate Trust as follows:

(a) The Trustee may pay as much of the income and principal to the Grantor's grandchild and his or her descendants, as the Trustee *** considers necessary for the health, maintenance and reasonable comfort, or education of each of them as the Trustee determines. The Trustee will make the payments in equal or unequal shares, taking into account the present and

prospective needs of those persons. Any income not so paid in each year shall be added to principal at the end of each year.

(b) On the death of a grandchild, the Trustee shall distribute their GST Separate Trust to any one or more persons and organizations (other than the creditors of the grandchildren) as the grandchild appoints by Will, specifically referring to this power of appointment.

(c) On the death of the grandchild, The Trustee shall, subject to the GST Separate Trust provisions, allocate the GST Separate Trust not effectively appointed as follows:

(i) To the descendant's [*sic*], *per stirpes*, of the Grantor's grandchild, or if there are none to the Grantor's then living descendant's [*sic*], *per stirpes*."

¶ 6        Marjorie died on April 28, 2009. At the time of her death, defendant and Marjorie's three grandchildren remained living. On September 21, 2009, defendant prepared a trustee's report, stating the only asset held in the Trust at the time of Marjorie's death was the farm real estate and that "[a]ll liquid assets were used to pay [for Marjorie's] nursing home care." Additionally, the report stated that pursuant to the trust agreement, all real estate held in the Trust had been allocated to the GST trust established for the benefit of Gary II.

¶ 7        In January 2017, plaintiffs initiated the underlying cause of action, and, in December 2017, they filed the seven-count, first amended complaint that is at issue on appeal. Six of the seven counts were directed against defendant. A seventh count, alleging legal malpractice (count VII), was directed against the attorney and law firm that assisted in preparing the trust agreement and advised defendant regarding the Trust after Marjorie's death. The legal malpractice

- 4 -

count was later dismissed, and it is not at issue on appeal.

¶ 8        Against defendant, plaintiffs brought claims seeking judicial construction of the Trust (count I), alleging breach of fiduciary duty (count II), seeking the imposition of a constructive trust (count III), alleging unjust enrichment (count IV), seeking an accounting of the Trust (count V), and seeking a declaratory judgment (count VI). Relevant to this appeal, in count I, plaintiffs alleged that "the four corners" of the trust agreement expressed Marjorie's intention to treat her grandchildren equally as "class beneficiaries *** with each grandchild to receive a benefit equal to one third of the value of the gift to the class." They asserted defendant unreasonably ignored and rejected that interpretation, as well as defeated Marjorie's intent, by distributing the Trust estate in a way that benefited only Gary II and not plaintiffs. Plaintiffs sought judicial construction of the Trust so that the trial court could "resolve ambiguity created or effectuated by [defendant] *** and to direct distribution of the Trust estate." They alleged: "There exists in the Trust an uncertainty, that is not necessarily an ambiguity of a single term or phrase, but instead an ambiguity of intent and meaning." Plaintiffs asked the court to construe the Trust consistent with their interpretation.

¶ 9        In count VI of their amended complaint for a declaratory judgment, plaintiffs asserted that the trial court should interpret the Trust "to include [them] as Trust beneficiaries, and declare [defendant] failed to fund [their] respective GST Exempt Trusts." Plaintiffs asked the court to enter judgment in their favor, identifying them as "Trust beneficiaries with equal vested interests in the class gift, who, each, should have received 1/3 of the value of the distribution for the benefit of the grandchildren into their respective GST Exempt Trusts."

¶ 10        Initially, on defendant's motion, the trial court dismissed five of the six counts against defendant, including counts I and VI, finding plaintiffs' claims were either barred by the

relevant statute of limitations or the doctrine of *laches*. However, the court later reconsidered its ruling and vacated its dismissals. In March 2019, defendant filed his answer and affirmative defenses to plaintiffs' amended complaint, denying plaintiffs' claims and, again, asserting they were barred by the relevant statute of limitations or *laches*.

¶ 11　　　　In September 2022, plaintiffs filed a motion for summary judgment on counts I and VI of their amended complaint. They argued that language within the four corners of the trust agreement expressed Marjorie's intention to treat each of her three grandchildren equally. According to plaintiffs, the Trust's language clearly gave them each a one-third interest in property that was in the Trust at the time of Marjorie's death, as well as a one-third interest in the income from such property. They pointed to paragraphs 7.02 and 7.50 of the trust agreement, which they asserted provided that, at the time of Marjorie's death, all Trust property would be awarded to her grandchildren up to the amount of the GST exemption and that the Trust property would be divided equally among the three grandchildren and placed in separate GST trusts. Although they acknowledged language in the trust agreement that required real estate to be "initially placed" in the GST trust created for Gary II, they noted that such allocation was only "up to *** one-third of the total GST exemption amount." Plaintiffs argued the language utilized in paragraph 7.50 showed "that the value [of the real estate was] to be divided by thirds."

¶ 12　　　　Plaintiffs also argued that the trust agreement otherwise reflected Marjorie's intent to distribute the Trust estate equally among her grandchildren in one-third shares. They noted that paragraph 7.01 provided that in the event defendant predeceased Marjorie, her personal and household effects were to be distributed to defendant's living descendants "*per stirpes* in equal shares." Plaintiffs further pointed out that the trust agreement created separate GST trusts for each grandchild, and they argued that paragraph 2.08 of the trust agreement, which defined the phrase

" 'Available GST Exemption Amount,' " treated all descendants equally. Finally, plaintiffs argued that the trust agreement contained no language that indicated Marjorie had any intent to disinherit plaintiffs or any intent to distribute the Trust estate to Gary II alone. Plaintiffs attached the trust agreement to their motion.

¶ 13        In October 2022, defendant filed a response to plaintiffs' motion for summary judgment. He argued that real estate held in the Trust at the time of Marjorie's death was properly allocated to the GST trust created for Gary II. Relying on paragraphs 7.02 and 7.50 of the trust agreement, defendant argued "that any real estate held by the *** Trust at the time of [Marjorie's] passing was initially to have been given to the GST Trust established for the benefit of [Gary II]." He acknowledged that "if the value of the real estate exceeded one-third of the GST Exemption Amount, the real estate exceeding that value could be allocated to the GST Trusts established for the benefit of Plaintiffs." However, defendant maintained that for 2009, the year Marjorie died, relevant provisions of the United States Code set the applicable GST exemption amount at $3.5 million, one-third of which was $1,166,666.66. According to defendant, "real estate owned by the [Trust] with a value of up to $1,166,666.66 was properly allocated solely to the GST Trust established for the benefit of [Gary II]." He further alleged that a May 2009 appraisal report established the value of real estate held by the Trust as $1,158,400. Defendant argued that the entirety of that real estate was properly allocated to Gary II's GST trust. He also asserted that genuine issues of material fact existed as to whether any additional property was held by the Trust at the time of Marjorie's death, in that while plaintiffs claimed additional assets existed, the trustee's report he prepared near the time of Marjorie's death showed the Trust held no assets other than real estate.

¶ 14        Defendant also noted that he had previously moved to dismiss plaintiffs' amended

complaint, arguing that count I failed to state a claim upon which relief could be granted because plaintiffs did not identify any ambiguity in the trust agreement and that both counts I and VI were barred by the doctrine of *laches*. He stated he was readopting and reincorporating those arguments into his response. To his response, defendant attached relevant portions of the United States Code, excerpts of Gary II's discovery deposition, and the May 2009 appraisal report.

¶ 15            In December 2022, the trial court entered a written order, granting plaintiffs' motion for summary judgment as to counts I and VI. It cited case authority for the proposition that "[w]hen the language of [a] document is clear, the court should not modify the document or create new terms. See *Northern Trust Co. v. Tarre*, 86 Ill. 2d 441, 450, 427 N.E.2d 1217, 1221 (1981)." The court then held that the language of the trust agreement "indicate[d] that [Marjorie] intended for the property of the Trust to be divided equally among her grandchildren upon her death, and not solely for the benefit of [Gary II]." It ordered that (1) plaintiffs and Gary II were "Trust beneficiaries with equal vested interests in the class gift and each should have received one-third of the value of the distribution for the benefit of the grandchildren into their respective GST Exempt Trusts," (2) the trustee take all necessary actions to establish the three separate GST trusts "using all property of the trust at the time of [Marjorie's] death, dividing the property equally among the three trusts for each grandchild," and (3) the trustee distribute all future income from the Trust to all Trust beneficiaries in equal one-third shares.

¶ 16            In January 2023, defendant filed a motion asking the trial court to enter a special finding pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016) that there was no just reason for delaying enforcement or appeal of the court's order granting summary judgment in plaintiffs' favor as to counts I and VI. The same month, the court granted defendants' motion and entered the requested Rule 304(a) finding.

¶ 17       This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19       On appeal, defendant argues the trial court erred by granting summary judgment in plaintiffs' favor as to counts I and VI of their amended complaint and directing that Trust property be divided equally among the three GST trusts established for the benefit of plaintiffs and Gary II. He contends the record contains no evidence that Marjorie's trust owned any property other than real estate at the time of her death and, pursuant to the unambiguous language of the trust agreement, such real estate had to be allocated only to the GST trust established for the benefit of Gary II. Defendant also maintains that because plaintiffs did not allege ambiguity in the language of the trust agreement in their amended complaint, an action for construction of the trust, which formed the basis of both counts I and VI, was "not proper." Alternatively, he argues that counts I and VI of plaintiffs' amended complaint are barred by the doctrine of *laches.*

¶ 20                      A. Construction or Interpretation of the Trust

¶ 21       Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "Where a plaintiff has moved for summary judgment, the materials relied upon must establish the validity of the plaintiff's factual position on all the contested elements of the cause of action." (Emphasis omitted.) *Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956, ¶ 7, 965 N.E.2d 452. "Once the movant has met its initial burden of production, the burden shifts to the nonmovant." *Id.* ¶ 12.

¶ 22       "Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt." *Beaman v.*

*Freesmeyer*, 2021 IL 125617, ¶ 72, 183 N.E.3d 767. The trial court's ruling on a motion for summary judgment is subject to *de novo* review. *Id.*

¶ 23 "In interpreting trusts, which are construed according to the same principles as wills, the goal is to determine the settlor's intent, which the court will effectuate if it is not contrary to law or public policy." *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574, 922 N.E.2d 1093, 1097 (2009). "In determining this intent, courts consider the plain and ordinary meaning of the words used, taking into consideration the entire document." *Id.* Additionally, "courts should give effect to each word and phrase and should decline to adopt a construction which would render any portion of the language meaningless or nonsensical." *Stein v. Scott*, 252 Ill. App. 3d 611, 615-16, 625 N.E.2d 713, 717 (1993) (citing *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172-73, 582 N.E.2d 120, 123 (1991)).

¶ 24 Initially, as argued by defendant, relevant case authority provides that an action for construction of a will or trust must be accompanied by an allegation of ambiguity in the document.

"The court will take jurisdiction to hear and determine complaints to construe wills where there is doubt or uncertainty as to the rights and interests of parties arising under such wills. [Citations.] On the other hand, the court will refuse to assume jurisdiction of a complaint to construe a will which is neither ambiguous or uncertain. The court does not acquire jurisdiction to construe a will merely because the complaint contains an allegation that a question requiring construction exists where the record shows no such question exists. [Citations.]" *Jusko v. Grigas*, 26 Ill. 2d 92, 96-99, 186 N.E.2d 34, 37-39 (1962) (finding an amended complaint "sufficiently stated a cause of action for will construction" where it contained allegations that "the will embodied a contract and that the will was ambiguous and

required construction").

See *Mitchell v. Snyder*, 402 Ill. 279, 286, 83 N.E.2d 680, 683 (1949) (stating that when there is "no ambiguity or uncertainty in the clause, there is nothing to construe," and "[a] court does not acquire jurisdiction to construe a will merely by allegation that a question requiring construction exists, when the record shows there is no such question"); *Lloyd v. Sears Bank & Trust Co.*, 67 Ill. App. 3d 141, 144, 384 N.E.2d 742, 745 (1978) ("In suits involving the construction of a will or trust, the complaint is fatally defective if the language of the document is unambiguous."); *Cickyj v. Skeltinska*, 93 Ill. App. 3d 556, 562, 417 N.E.2d 699, 703 (1981) (concluding "that the terms of the decedent's will [were] clear and unambiguous" and, "[t]herefore, the amended complaint fail[ed] to set forth an action for the construction of the language"); *In re Estate of Krotz*, 168 Ill. App. 3d 545, 549, 522 N.E.2d 790, 792 (1988) ("Before undertaking to construe a disputed provision in a will, the trial court must find an ambiguity giving rise to doubt or uncertainty as to the rights and interests of the parties arising under such wills."); *In re Estate of Miller*, 230 Ill. App. 3d 141, 148, 595 N.E.2d 630, 634 (1992) (stating that "because a court has no authority to construe a will which is neither ambiguous nor uncertain [citation], [the] petitioner's action for construction of [a] will should have been dismissed").

¶ 25   The threshold question in an action to construe a will or trust is whether construction is necessary, and only if a court finds that the will or trust is ambiguous will it entertain the action. *Coussee v. Estate of Efston*, 262 Ill. App. 3d 419, 423, 633 N.E.2d 815, 818 (1994). Although cases have discussed the ambiguity requirement in terms of jurisdiction, "it is more precise to say that once a court determines that no ambiguity exists in a will, an action for construction should be dismissed." *Id.* at 424. "If a court finds that a will is ambiguous, however, the action for construction continues, and the court is given greater latitude to determine the

testator's intent." *Id.* "The court may apply rules of construction to the will [citation], and the court may examine extrinsic evidence relevant to the testator's intent to resolve the ambiguity." *Id.*

¶ 26 Whether a will or trust document is ambiguous presents a question of law, "and ambiguity can be found only if the language is reasonably or fairly susceptible to more than one interpretation." *Stein*, 252 Ill. App. 3d at 615. "A contract is not ambiguous merely because the parties disagree on its meaning." *Id.* "An ambiguity can appear on the face of a will or when attempting to implement a will's provisions." *Coussee*, 262 Ill. App. 3d at 424. "A latent ambiguity occurs when the will appears clear on its face but some fact external to the will reveals that a description of a bequest or of a legatee in the will is inadequate to determine who or what was intended by the testator." *Id.* "For the threshold determination of whether or not a will is ambiguous, the court may examine only the four corners of the will and evidence brought by the parties which tends to show a latent ambiguity." *Id.*

¶ 27 Here, count I of plaintiffs' first amended complaint was for construction of the Trust. In connection with that count, they alleged as follows:

> "Plaintiffs seek judicial construction of the Trust for the court to interpret or construe the Trust to resolve ambiguity created or effectuated by [defendant], as demonstrated herein, and to direct distribution of the Trust estate. There exists in the Trust an uncertainty, that is not necessarily an ambiguity of a single term or phrase, but instead an ambiguity of intent and meaning where the court is called to consider the circumstances."

Plaintiffs did not allege that any ambiguity was present on the face of the Trust or that a latent ambiguity existed in that some external factor rendered Marjorie's intentions unclear. Instead, they asserted the existence of an ambiguity *created by defendant* in his allegedly erroneous

interpretation of the Trust. In connection with their motion for summary judgment, plaintiffs argued the Trust language "clearly" expressed Marjorie's intention to treat her grandchildren equally and give both plaintiffs a one-third interest in the property held by the Trust at the time of her death. Additionally, on appeal, plaintiffs explicitly assert that the Trust language is unambiguous.

¶ 28 Because plaintiffs failed to allege that the Trust was ambiguous, they did not sufficiently state a cause of action for trust construction. Moreover, without alleging or establishing ambiguity in the Trust at issue, a necessary element of a construction claim, plaintiffs could not show their entitlement to summary judgment on that claim. Accordingly, we agree with defendant that the court erred by granting partial summary judgment in plaintiffs' favor as to count I.

¶ 29 Defendant argues that the result must be the same for plaintiffs' claim for a declaratory judgment in count VI, which he asserts was also based on a claim of construction. We disagree.

¶ 30 "The essential requirements for asserting a declaratory judgment action are (1) a plaintiff with a legal tangible interest, (2) a defendant with an opposing interest, and (3) an actual controversy between the parties involving those interests." *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 36, 184 N.E.3d 233. In count VI of their amended complaint, plaintiffs asked the trial court to "interpret Articles 7.20 and 7.50 of the Trust to include [them] as Trust beneficiaries, and declare [that defendant] failed to fund [their] respective GST Exempt Trusts." As set forth above, both in the trial court and on appeal, plaintiffs have essentially conceded that the language of the trust agreement is clear and unambiguous but disagreed with defendant on its meaning, arguing defendant misinterpreted the plain and unambiguous language of the trust agreement. Under such circumstances, "whether the trust agreement itself is ambiguous

is not controlling, since it is the duty of the trial judge to interpret the agreement, which presents a question of law, regardless of ambiguity." *Espevik v. Kaye*, 277 Ill. App. 3d 689, 694, 660 N.E.2d 1309, 1313 (1996); see *Barasch v. Barasch*, 259 Ill. App. 3d 958, 961, 628 N.E.2d 833, 835 (1993) (same). "Furthermore, it is the duty of the reviewing court to determine whether the trial judge's interpretation of the agreement was correct." *Espevik*, 277 Ill. App. 3d at 694. We note that even the case authority cited by defendant on appeal recognizes a court's ability in a declaratory judgment action to interpret trust provisions absent a claim or finding of ambiguity. See *Stein*, 252 Ill. App. 3d at 615 (interpreting the provisions of a trust in a declaratory judgment action when "neither party dispute[d] that the trust terms were unambiguous" and no ambiguity was found by the court).

¶ 31        Although we reject defendant's assertion that declaratory judgment remedies were unavailable to plaintiffs because they did not allege an ambiguity in the Trust, we agree that the trial court erred in its interpretation of the Trust. Specifically, we find plaintiffs' interpretation of the Trust ignores the plain and unambiguous language of the trust agreement and Marjorie's expressed intent of allocating real estate held by the Trust for the benefit of Gary II up to the GST exemption amount.

¶ 32        The record reflects the trial court determined the trust agreement was clear and that its language indicated Marjorie intended any Trust property be divided equally among her grandchildren at the time of her death, "and not solely for the benefit of [Gary II]." The most relevant provisions of the trust agreement are contained in paragraphs 7.02 and 7.50. As noted by plaintiffs, paragraph 7.02 indicates an intention by Marjorie to equally distribute Trust property to her grandchildren, stating that upon Marjorie's death, "the available GST Exemption Amount of Trust property" would be given to the trustee "to allocate in shares of equal value for [Marjorie's]

- 14 -

grandchildren." Significantly, however, paragraph 7.02 also sets forth qualifications regarding such allocations. First, it explicitly states that "allocation for [Marjorie's] grandchildren under [paragraph 7.02] *shall be subject to* the GST Separate Trust provisions," which are set forth in paragraph 7.50 of the trust agreement. (Emphasis added.). It also provides that when making allocations, the trustee "shall allocate all real estate" to the GST trust established for the benefit of Marjorie's grandson, Gary II.

¶ 33        Paragraph 7.50 then provides that any Trust property allocated for a grandchild must be used to fund the principal of one of three separate GST trusts established for their benefit. Importantly, paragraph 7.50 further provides that "[w]hen allocating the property between these three Trusts, all real estate held in this Trust shall be allocated to [the Gary II GST trust] up to the allowable amount which is one-third of the total GST Exemption Amount." It next states that any excess real estate that exceeds the funding amount for Gary II's GST trust should be distributed under the provisions of paragraph 7.02. Although paragraph 7.50 indicates the maximum funding amount for Gary II's GST trust is one-third of the total GST exemption amount, it also unequivocally requires Trust real estate up to that maximum amount be allocated to only Gary II's GST trust.

¶ 34        The plain language of the trust agreement clearly and unambiguously expresses an intention that Gary II be given preference over plaintiffs with respect to the allocation of real estate held by the Trust. Paragraph 7.02, which generally provides for an equal allocation of Trust property, is subject to qualification and is, ultimately, subordinate to Paragraph 7.50, which explicitly requires that the trustee allocate Trust real estate up to one-third of the GST exemption amount to only the GST trust for Gary II. Plaintiffs' interpretation, which was accepted by the trial court, fails to give effect to relevant provisions in the trust agreement and essentially renders

meaningless the language in paragraphs 7.02 and 7.50 regarding the allocation of real estate to Gary II.

¶ 35        Additionally, we note that during the summary judgment proceedings, defendant presented evidence that one-third of the applicable GST exemption amount at the time of Marjorie's death was $1,166,666.66 and that the appraised value of real estate held by the Trust and allocated to Gary II's GST trust was $1,158,400. Plaintiffs do not dispute that evidence.

¶ 36        On appeal, the parties both discuss the Third District's decision in *Shea v. Lyons*, 47 Ill. App. 2d 187, 192, 198 N.E.2d 151, 154 (1964), which plaintiffs cited below for the proposition that a "testator's heirs cannot be disinherited on mere conjecture, and when the testator seeks to disinherit them[,] he must express his intention clearly, either by express words or necessary implication." (Emphasis omitted.). In that case, the court further stated as follows:

> "[L]aw favors the construction of a will which conforms most nearly to the general
>
> law of inheritance. Accordingly, where there is an *ambiguity* in a will, unless there
>
> is a manifest intention to the contrary, the presumption that the testator intended
>
> that his property should go in accordance with the laws of descent and distribution
>
> will be applied as an aid in construing the will, and a construction which favors
>
> heirs at law in preference to persons not so closely related to the testator should be
>
> given to the will. In construing a will the presumption is against disinheritance, and,
>
> while the testator is allowed to ignore, either in part or altogether, the rules laid
>
> down in the statute as to where the estate of a decedent should go, it will not be
>
> presumed that it was his intention to disregard the law as it is contained in the statute
>
> in any part unless the terms of the will make such intention manifest. *** [I]f
>
> disinheritance is manifest from the will, no construction contrary to the manifest

language of the will will be permitted." (Emphasis added.). *Id.* at 191-92.

On appeal, plaintiffs argue that Marjorie expressly indicated that Trust property was to be divided equally between her grandchildren and, as a result, "[d]efendant's construction constitutes an improper disinheritance in contravention of the clearly expressed intent of Marjorie." They assert that "[a]s stated in *Shea*, [they] cannot be disinherited on mere conjecture."

¶ 37        Again, however, the language of the trust agreement is unambiguous. As a result, we look to the plain language of the trust agreement without resorting to rules of construction. As stated, plaintiffs' interpretation of the Trust ignores and fails to give effect to language in the trust agreement that explicitly requires the real estate held by the Trust to be allocated to the GST trust established for the benefit of Gary II. The plain language of the trust agreement supports defendant's interpretation and does not result in plaintiffs being "disinherited on mere conjecture."

¶ 38        Defendant acknowledges that under circumstances where only real estate under one-third of the GST exemption amount remained in the Trust, there are no Trust assets to fund plaintiffs' GST trusts. However, "[i]t is an established rule *** that when a testator fails to provide in the will for a contingency which the testator most likely would have provided for if he had considered it, the court cannot guess or speculate as to the disposition the testator likely would have made." *Larison v. Record*, 117 Ill. 2d 444, 448, 512 N.E.2d 1251, 1253 (1987). In this instance, the trust agreement contains no express provision addressing the circumstance of the Trust assets including only real estate, and, specifically, real estate appraised at less than one-third of the applicable GST exemption amount. We cannot speculate that such an event would have altered the manner in which Marjorie elected to allocate the Trust real estate.

¶ 39        For the reasons expressed, the plain and unambiguous language of the trust agreement does not support plaintiffs' interpretation. Accordingly, we find the trial court erred by

granting summary judgment in plaintiffs' favor on their claim for declaratory relief in count VI.

¶ 40                                                        B. *Laches*

¶ 41        On appeal, defendant additionally asks this court to "determine that Counts I and VI of Plaintiffs' First Amended Complaint are barred by the doctrine of *laches*."

¶ 42        "*Laches* is an equitable principle that bars relief for a litigant whose unreasonable delay in bringing an action has prejudiced the other party." *PNC Bank, National Ass'n v. Kusmierz*, 2022 IL 126606, ¶ 25, 193 N.E.3d 1196. "The party asserting *laches* bears the burden of establishing the defense by a preponderance of the evidence." *Id.* ¶ 26. "Two elements must be established for *laches* to successfully defeat a claim: (1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party resulting from the delay." *Id.*

¶ 43        Initially, we note that defendant raised the doctrine of *laches* as an affirmative defense when answering plaintiffs' amended complaint. Although he also raised the issue in his response to plaintiffs' motion for summary judgment, defendant did not file a cross-motion for summary judgment asserting the doctrine of *laches* operated to defeat plaintiffs' claims as a matter of law.

¶ 44        Additionally, while defendant argues a lack of diligence by plaintiffs in bringing their claims and points to specific evidence in the record to support his contentions, he raises no argument in his appellant's brief that he suffered any prejudice. In his reply brief, defendant generally asserts that because many years have passed since Marjorie's death, relevant documents have become unavailable, witnesses have died or can no longer be reached, recollections have faded, and evidence has become less available. However, he fails to cite any evidence in the record to support his claim and does not specifically identify what relevant evidence is no longer available to him. Given the above circumstances, defendant has failed to show his entitlement to a

determination that counts I and VI of plaintiffs' complaint are barred by *laches*.

¶ 45                                    III. CONCLUSION

¶ 46         For the reasons stated, we reverse the trial court's judgment and remand for further

proceedings.

¶ 47         Reversed and remanded.